COAN v. TOWNSHIP OF BROWNSTOWN.

1. TOWNSHIPS—DEFECTIVE BRIDGES—LIABILITY—INSTRUCTIONS.
  In an action against a township for injuries to a traction engine by the giving way of a bridge, the court, in concluding his charge to the jury, said that there was something, at least, that they could remember: That the engine went down and was injured; that the bridge gave way; that they were starting to use considerable caution, by putting planks across; how the engine went off; how the bridge gave way; and all about it,—that that was something that must be left to the judgment of the jury. *Held*, that the instruction was erroneous, as conveying a wrong impression as to what would establish defendant's negligence.

2. TRIAL—CONDUCT OF COUNSEL.
  Where a witness testified that, on examining an engine after an accident, he found the piston rod and cylinder uninjured,

counsel's conduct in asking the witness whether he had the face to sit there and swear to the jury that, without putting steam on the engine, he could tell anything about it, and adding that the witness ought to be committed, was prejudicial, and should have evoked a reprimand from the court.

3. TORTS—DAMAGES—INTEREST.

Where, in an action on the case for negligence, defendant's liability was established as for a total loss of the property involved, interest on the value of the property was properly allowed from the date of the injury.

Error to Wayne; Donovan, J. Submitted February 14, 1901. Decided May 21, 1901.

Case by Amos A. Coan against the township of Brownstown for injuries to property caused by a defective bridge. From a judgment for plaintiff, defendant brings error. Reversed.

*Samuel W. Burroughs,* for appellant.

*James H. Pound,* for appellee.

LONG, J. This action was brought under the statute to recover damages for injuries occasioned to plaintiff's threshing engine by the falling of a bridge over which the engine was passing.

It appears that the bridge was built some 18 or 20 years before the accident, but that it had been overhauled and rebuilt in 1894. It spanned what was called the "Blakely Ditch," and was about 30 feet long and 16 feet wide. As originally built, it had a long stringer, 30 feet in length, on each side, reaching from one abutment to the other. These stringers were heavy, square, continuous timbers; the ends resting upon abutments about 8 feet high. Braces were mortised in the stringers some distance from each end, meeting in the center about 5 feet above the center of the stringers. Through the top or apex of these braces an iron rod extended down through the stringers on each side, and through a supporting beam under the stringers. This beam was a heavy timber, and for years

acted as a support to the center of the stringers. The center pieces, upon which the plank floor of the bridge was laid, extended from each abutment to the center beam. Heavy planking for the floor was then laid across the bridge from stringer to stringer, resting upon these center pieces.

The evidence is conflicting as to how the repairs were made in 1894. Plaintiff's testimony tended to show that at that time the east stringer had become rotten, and was taken out and a new stringer put in, which, instead of extending from abutment to abutment in one continuous piece, as it had formerly done, was put in in two pieces, each piece extending only from its abutment to the center beam, and the center ends of the stringer resting upon the cross beam; that, to strengthen the center of this east stringer, a heavy plank had been nailed on each side of the stringer, extending out some distance on either side of the cross beam. The defendant introduced testimony tending to show that the new stringer put in was a continuous piece, extending from one abutment to the other.

The accident occurred in August, 1896. The engine was a self-propeller, and weighed about six tons. When the plaintiff approached the bridge that day, he stopped his engine and examined the bridge. The pathmaster of the district was there, and the plaintiff asked him if he thought the bridge was as safe as it had been the year before, when he crossed it with his engine. The pathmaster said he thought it was. They then took some heavy planks and laid them down lengthwise of the bridge, for the wheels of the engine to run on. The claim of the plaintiff is that, when this was done, the pathmaster said there would be no danger then in taking his engine over it. He attempted to do so, and, when near the center, the east stringer gave way, and the engine fell or went off the east side into the ditch, occasioning the damage for which suit was brought. The claim of the defendant is that the engineer was careless and negligent in driving his engine over the bridge, in that he lost control of it,

and that it ran too near the east side, thus causing the east stringer to break.

The court charged the jury upon the various claims of the parties. He said to the jury:

"If you find that the bridge, as built, and as repaired two years previous, was reasonably safe and suitable for ordinary travel, including the bearing up of an engine like the one in question, and that the township used due diligence in the construction and in the repairs, and in its watchfulness over the condition of the bridge, and that the accident occurred without any fault of its officers, or in the construction of the bridge or in its repairs, the plaintiff cannot recover."

The court fairly submitted the issues to the jury, but, in concluding his charge, said:

"If, with all the words that have crept into the case, I leave it to you, for there is something left, at least, that you can remember: That the engine went down and was injured; that the bridge gave way; that they were starting to use considerable caution, by putting planks across, making a double-plank floor; how the engine went off; how the bridge gave way; and all about it. That is something that we must leave to the judgment of eleven men."

It is the claim of the defendant that this last part of the charge was misleading to the jury and prejudicial to defendant. We think that this part of the charge was misleading, and may have conveyed a wrong impression to the jury as to what facts would establish the negligence of the defendant.

One Mr. Wagar was called as a witness by the defendant. He testified on his cross-examination, in relation to the condition of the engine when found in the ditch, that the piston was not injured, as it was protected by the cylinder, and that the cylinder was not broken. He was asked by plaintiff's counsel:

"Maybe I did not catch you exactly. Have you got face enough to sit there and swear to this jury that, without putting steam on that engine, you could tell anything about it,—whether that piston rod was right, straight or not,—until you took and used it ?"

This language was objected to by defendant's counsel, when plaintiff's counsel stated: "I think that this witness should be pretty near committed." Counsel for defendant excepted to these remarks, and the court compelled the witness to answer the question. There is nothing in the testimony of the witness which called for these remarks from counsel, and the tendency was to prejudice the jury. The court should have then and there reprimanded counsel for such uncalled-for and prejudicial statements.

There was great contradiction among the witnesses as to the value of the engine; some of plaintiff's witnesses placing its value at $1,200 and over, and the defendant's witnesses testifying that it was an old engine, and not worth over $150. The jury returned a verdict for the value of the engine at $800, and interest of $166.99; being interest from August 8, 1896, the date of the injury. The court charged the jury on the question of interest on plaintiff's claim as follows:

"The total claim of the plaintiff is $1,210. If the jury find he is entitled to recover, his damages will be fixed by the jury. This is modified under the testimony of the case, to which they may add or compute 6 per cent. interest for the time that they have been already told to compute the interest for."

It is the claim of defendant that no interest can be allowed in this class of cases prior to judgment.

The declaration avers, substantially, that, after the accident, the plaintiff delivered up the engine to the township officers upon their promise to have the same repaired and then returned to him; that they never had it repaired and never returned it, but left it out in a field, where it became rusted and worthless; that by reason thereof the plaintiff lost the engine, which was of the value of $1,200. Plaintiff's proofs tended to show that the engine was delivered to the township officers for repairs. The case was tried by the plaintiff as though the engine were a total loss. The defendant gave evidence tending to show

that no arrangement was ever made with plaintiff to do anything more than pay for the cost of repair, and that the cost of such repair would not exceed $80. The supervisor of the township testified that he directed the plaintiff to take the engine to the shop, and that, if he would do so, the township would pay for the repairs, which he estimated would be about $80. This phase of the case was not submitted to the jury. The question submitted was as to the total value of the engine. There was nothing allowed for the value of the loss of the use of the engine, and, that being so, the plaintiff was certainly entitled to the interest on the value of the property. Interest may be recovered as a legal compensation for lost use. *McGuire* v. *Galligan*, 53 Mich. 453 (19 N. W. 142). We think, therefore, that the court was not in error in this part of the charge as to interest.

For the errors pointed out, the judgment must be reversed, and a new trial granted.

The other Justices concurred.