*In re* WIDENING OF WOODWARD AVE.

APPEAL OF PALMER.

1. Eminent Domain—Jury—Title to Land.

Title to land being condemned may not be litigated in condemnation proceedings brought by board of county road commissioners to obtain land for widening a highway since the jury in such proceedings is a nonjudicial body of 12 freeholders

residing in the vicinity of such property and performs its whole duty in determining necessity for taking the land and finding the amount of damages; hence the division of the award between holders of the reversionary interest and grantee of right of way for public use could not be determined therein (Const. 1908, art. 13, § 2; 1 Comp. Laws 1929, § 3784 *et seq.*)

2. SAME—PRELIMINARY NEGOTIATIONS.
    Under statute authorizing board of county road commissioners to condemn lands for a public purpose, it is not necessary that they negotiate with owners, resident of said county, as required under general highway law, prior to the institution of condemnation proceedings to acquire land in order to widen a highway (1 Comp. Laws 1929, § 3784 *et seq.*, § 3986).

3. TRIAL—APPEAL TO PASSION.
    Parties are entitled to a fair trial on the merits of the case, uninfluenced by appeals to passion or prejudice.

4. APPEAL AND ERROR—REVERSIBLE ERROR.
    Appellate courts should not interfere, unless the errors complained of are such as may fairly be said to have had a controlling influence in securing the result.

5. TRIAL—PREJUDICIAL REMARKS.
    Remarks calculated to prejudice a jury are improper.

6. SAME—GOOD FAITH OF PUBLIC SPIRITED CITIZENS—NATIONALITY OF LITIGANTS.
    In the excitement of a trial, counsel may often go outside of the record in advocating their cause before a jury, but such forays should not extend into fields wherein the good faith of a departed, public-spirited citizen would be impugned nor the nationality of a litigant be criticized.

7. ATTORNEY AND CLIENT—TRIAL.
    It is the duty of lawyers to try their lawsuit to the end that justice may prevail.

8. EMINENT DOMAIN—ARGUMENT OF COUNSEL—PASSION—PREJUDICE.
    In condemnation proceedings by board of county road commissioners to acquire land for widening a street, which had been given a city for an entrance to a park wherein argument of counsel for the board was not based upon testimony taken in the trial of the cause, impugned the good faith of a deceased public-spirited citizen of whom an heir was a party and criticized the nationality of a litigant, remarks were of such a nature as to deflect the attention of the jury from issues involved and had a controlling influence upon its verdict.

Appeal from Recorder's Court of Detroit; Jeffries (Edward J.), J.   Submitted January 15, 1941. (Docket No. 26, Calendar No. 41,402.)   Decided April 8, 1941.

Action by Board of County Road Commissioners, on behalf of Wayne County, against Harold Palmer, Winifred Palmer, and City of Detroit, to condemn lands in the City of Detroit in order to widen and change Woodward Avenue from Seven Mile Road to Six Mile Road.   From a nominal verdict in their favor, defendants Palmer appeal. Reversed and new trial granted.

*Elmer G. Rice,* for plaintiff.

*Leland Kennedy (Eugene J. Fisher,* of counsel), for defendants Palmer.

SHARPE, C. J.   The board of county road commissioners on behalf of the county of Wayne instituted proceedings against Harold and Winifred Palmer (his wife) and the city of Detroit for the purpose of condemning certain lands in the city of Detroit in order to widen Woodward avenue between Six and Seven Mile roads.   The land involved adjoins the original Woodward avenue on the west. It has a depth of 121 feet and a length of 684.42 feet along Woodward avenue.

Sometime prior to 1899, Senator Thomas W. Palmer dedicated to the city of Detroit a parcel of land containing 133 acres which has since been used and known as Palmer Park and which lies immediately west of the land in issue in this cause.   Subsequent to the above dedication and on September 25, 1899, Thomas W. Palmer and wife, as owners in fee, executed a deed of gift to the city of Detroit of addi-

tional property which then fronted on Woodward avenue and in which the land in issue was included. The purpose of the above gift was stated in the deed as follows:

"The driveways and street 'A' connecting said driveways as shown on map, we hereby dedicate to the perpetual use of the public, reserving to ourselves, our heirs and assigns, the reversion or reversions thereof whenever discontinued by law.

"The intent and purpose of this indenture is to convey to the city of Detroit the above-described land and premises to be used only as a boulevard or ornamental avenue of access from Woodward avenue to Palmer Park and for such use only the land above described is conveyed in perpetuity, which said land is to be improved and property cared for by the grantee herein, the said grantee to maintain a roadway or roadways which as in the roadways surrounding the Park to which this appertains, are hereby dedicated to the use of the public forever and such parts of said land as are not used as roadways or footwalks shall be kept sodded and ornamented with trees, shrubs and flowers, provided however, that said parties of the first part shall have the right to connect with what is known as Palmer Park sewer or such other sewer as may be maintained by the grantee herein in such manner and by such drain as will afford necessary and proper drainage to the premises and buildings now owned or occupied by or reserved to the use of the parties of the second part.

"And provided further that nothing in this conveyance contained shall be so construed as to prevent owners of abutting property from a reasonable use of said boulevard, or to defeat reversion to the grantor or his heirs, in case said property should ever be used for any other purpose than those above designated or shall be wholly abandoned or vacated by the grantee and provided, also, that access to the property of abutting or neighboring owners by

teams and wagons for the purpose of furnishing such owners with domestic supplies shall not be denied.''

The sole heir of the grantors, Thomas W. Palmer and wife, is the respondent Harold Palmer and, as such, he is the present owner of the interest reserved in the deed.

The deed of gift was accepted by the city of Detroit and has been used as an ornamental avenue of access to Palmer Park. Woodward avenue as originally laid out was 66 feet wide. Prior to the present action, the city of Detroit, without instituting condemnation proceedings, used 17 feet more land along the west side of Woodward avenue for highway purposes. The property so used is included in the present controversy. At the time of this taking, the paved portion of Woodward avenue proper had been extended three feet over the easterly side of the 17 feet and the remaining 14 feet were used by the city for things incident to a street, including sidewalks along Woodward avenue.

During the trial of the cause, the city of Detroit requested that the jury return a verdict in the amount of six cents. The jury returned a verdict declaring for necessity and fixing compensation as to the city of Detroit in the sum of six cents. The verdict was confirmed by order of the trial court and the city has taken no appeal. The jury also returned a verdict for defendants Palmer in the sum of six cents which was confirmed by order of the trial court.

Defendants Palmer appeal and contend that the trial court was in error in denying their motion to dismiss based on the fact that no effort to purchase the property was made prior to the condemnation proceedings; that the property reverted to defendants when the same was used as a part of the superhighway; that the court and jury erred in refusing

to find an abandonment by the city of Detroit of a portion of the premises which previously had been used as a part of Woodward avenue; that the court and jury erred in refusing to find that the interest of appellants was a substantial interest; that the court and jury was in error in refusing to find that the city of Detroit was the party petitioner; that the remarks and arguments to the jury by counsel for the city of Detroit amounted to reversible error; and that it was error upon the part of the trial court to refuse a new trial for the reasons stated in appellant's motion.

Appellee urges that there has been no abandonment of the property by the city of Detroit; and that such a question may not be decided in condemnation proceedings. It appears to us that the issue of whether appellants may raise the question of abandonment in the present proceedings is of primary importance to decision in this case. In deciding this question we have in mind that the record title of parcel 15 according to the petition filed in the cause indicated the city of Detroit to be the owner of this parcel and the appellants Palmer to be the reversioners; that for some time prior to the institution of the present proceedings the easterly three feet of the 17 feet had been covered by the pavement of Woodward avenue and the balance of the 17 feet had been used for sidewalk and public utility purposes; that there has never been any condemnation of this 17-foot strip of land; and that appellants, prior to the taking of testimony in the trial of this cause, served on the city of Detroit and the board of county road commissioners a written notice to the effect that the right of the city of Detroit to use and possess the land described in the deed of 1899 had ceased and terminated and that all rights in and to said land had reverted to Palmer because of misuse of the land by the city of Detroit. The notice also

demanded that the city of Detroit and the board of road commissioners immediately quit and surrender said land. The above notice was the only affirmative action taken by appellants to recover possession of said lands.

The function of the jury in this condemnation proceeding is specifically set out in 1 Comp. Laws 1929, § 3793, which reads as follows:

"The jury shall determine in their verdict the necessity for the proposed improvement and for taking such private property for the use or benefit of the public for the proposed improvement and in case they find such necessity exists they shall award to the owners of such property and others interested therein such compensation therefor as they shall deem just. If any such private property shall be subject to mortgage, lease, agreement or other lien, estate or interest they shall apportion and award to the parties in interest such portion of the compensation as they shall deem just."

Justice COOLEY in *Mansfield, C. & L. M. R. Co. v. Clark,* 23 Mich. 519, a condemnation suit in which the condemnee's title was questioned, stated:

"Questions of title to the land appropriated are not to be determined by this jury, but may come up in a proceeding to settle the right to the money awarded."

In *Port Huron & S. W. R. Co.* v. *Voorheis,* 50 Mich. 506, we held that the title to property being condemned could not be litigated in the condemnation proceedings.

In *Toledo, S. & M. R. Co.* v. *Campau,* 83 Mich. 31, we said:

"There is no provision in the statutes relative to condemnation proceedings authorizing the submission of special questions. The law intends that the proceedings shall be as simple as possible. The

duty of the jury is justly and impartially to ascertain and determine the necessity for taking the property proposed to be taken for the public use specified in the petition. Their finding in this respect is a general one, and there is no necessity for any special finding or verdict. If they determine the necessity, then they find damages which ought justly to be awarded to each landowner. They have then performed their whole duty under the law.''

In *Re Brewster Street Housing Site,* 291 Mich. 313, 343, we said:

''Proceedings for the condemnation of property are not tried before a court. The constitutional tribunal here involved was a jury of 12 freeholders residing in the vicinity of such property. They were charged by the Constitution of this State with the duty to determine whether there was a necessity for using such property sought to be taken, and if they found there was a necessity for taking such property for a public use, to fix the just compensation to be made therefor. This seems plain from article 13, § 2, Const. of 1908.''

In the case at bar the proceedings were instituted under the authority of Act No. 124, Pub. Acts 1883, as amended. (1 Comp. Laws 1929, § 3784 *et seq.* [Stat. Ann. § 8.41 *et seq.*].) It is clear that title to the land involved could not be decided by the condemnation jury, a nonjudicial body. It follows that the legal status of appellants must be classed as parties owning a reversionary interest and nothing more.

Appellants urge that the court had no jurisdiction, unless a bona fide effort were made to negotiate the purchase of the private property involved before the institution of the action. In the case at bar, the petition to condemn the lands was filed in

1931 and until the time of the trial of this cause the city of Detroit was the owner of the land with only a possibility of reverter in the appellants.

It is urged by appellee that up to the time when the above petition was filed, appellants had no interest as *"owner, resident of said county;"* that under the provisions of Act No. 283, chap. 4, § 11, Pub. Acts 1909, as amended (1 Comp. Laws 1929, § 3986 [Stat. Ann. § 9.111]), this lack of ownership eliminated the necessity of bargaining with appellants under any circumstances; that the interest of appellants was valueless and, therefore, it was not obligatory, under the statute, to make them an offer; and that the record does not disclose that appellants were residents of Wayne county at the time the petition was filed. In the case at bar, the petition was filed under and by virtue of the provisions of Act No. 124, Pub. Acts 1883, as amended, being contained in title 8, chap. 64, 1 Comp. Laws 1929, entitled "Condemnation." This law, 1 Comp. Laws 1929, § 3784 *et seq.,* authorizes the board of county road commissioners of any county to take private property for the use and benefit of the public and states the procedure for so doing. Section 3809, 1 Comp. Laws 1929 (Stat. Ann. § 8.66), does not require any negotiation for the purchase of a right of way from the owner of the land. It provides an optional privilege granted to cities and villages in condemning private property for public use and is not mandatory as to the use of any other procedure. The above act is silent as to the provisions requiring negotiation with the owner of land as set out in 1 Comp. Laws 1929, § 3986, of the general highway law. In our opinion such negotiations are not necessary.

Appellants also allege error in the remarks and argument made by counsel for the city of Detroit

in his address to the jury. The particular remarks complained of are as follows:

"Disabuse your minds to start with, that when a man dedicates a park that his heart is just filled to bursting with the love of humanity; that he is just so full of the milk of human kindness that it is spurting out all over him, and that he gives this park out of hand with no return in sight at all.

"The average park that is dedicated, if you know anything about the history of parks, is dedicated purely and simply as a real-estate speculation; purely and simply. Cass Park * * * was put in there to boost and promote and make better and make the Cass farm sell more quickly. Parrin Park was the same thing. Atkinson Park * * * was the same thing. * * * Rouge Park was bought because thereabout real-estate values were so high and everybody was so greedy that nobody would dedicate that park, and, as a result, no one's name was on it. * * *

"But the history of parks, if you will go into them definitely, it is done with the selfish purpose of promoting the sale of real estate, and Palmer Park was absolutely no exception in this matter. * * *

"So, along comes the venerable gentleman whom I had the pleasure of knowing as a boy and says, 'Well, I will dedicate seven acres as a perpetual access from Woodward Avenue into this Park. Oh,'— and again the Yankee comes in—'some day this town may change its opinion and may want to go into the other place, and if it does and you close up this entrance and don't use it as an entrance any more, I want it back for my heirs and assigns.' This milk of human kindness had all run on the original dedication. * * *

"Do you suppose that if Senator Palmer, God rest his soul, was here now, and he saw the size of this city and he knew that it was for the best inter-

ests of that park to allow this, do you suppose he would say, 'No, I want my pound of flesh?' * * *

"Well, maybe this little Spanish boy that he brought over from Spain was in the saddle at that time. * * *

"Twelve good men and true said 'apple sauce;' it is an entrance to the park and it is worth just 'six cents.' * * *

"This thing was beaten before and it ought to be beaten again. * * *

"What I marvel at sometimes is that they will bring in 12 people who, in these troubled times, own property and struggle to keep it, and say to them, 'Here is an intangible something; a thing that doesn't amount to much; that you cannot measure; but to be in the role of Santa Claus, on March 7, 1933, we should give this man a lot of money for this entrance, and they think they can make you believe it.

"Here we are; the morning papers full of what in the name of God we are going to get that you can call money and that you can spend for money, and yet we must dig in and give this man something because of a technical violation that he claims; something that he says—some damage that has occurred to his heir-at-law here on this entrance. * * *

"But I ask you to use your conscience and I ask you to go out into your juryroom, and, after you have weighed it all * * * say to yourselves, 'In a time of distress, depression, and hardship, such as we have now, have I any right now to do it; is this a time of philanthropists or is this the time to be a real hardheaded businessman?' "

In *Layton* v. *Cregan & Mallory Co., Inc.*, 269 Mich. 574, 583, we said:

"The general principle underlying all these cases is that the parties are entitled to a fair trial on the merits of the case, uninfluenced by appeals to passion or prejudice."

In *Fort-Street Union Depot Co.* v. *Jones,* 83 Mich. 415, we said:

"Appellate courts should not interfere, unless the errors complained of are such as may fairly be said to have had a controlling influence in securing the result."

It is a general principle that remarks calculated to prejudice a jury are improper. Our problem in the case at bar is to determine whether the remarks made were of that nature.

In our examination of the record we find that the argument complained of was not based upon testimony taken in the trial of the cause. We realize that in the excitement of a trial, counsel may often go outside of the record in advocating their cause before a jury, but such forays should not extend into fields wherein the good faith of a departed, public-spirited citizen, such as was Senator Palmer, would be impugned. Nor should there be any criticism of the nationality of a litigant in a court of justice. It is the duty of lawyers to try their lawsuit to the end that justice may prevail. In our opinion, the remarks of counsel were of such a nature as to deflect the attention of the jury from the issues involved and had a controlling influence upon its verdict.

While it is regrettable that this case must be sent back for retrial, with the costs and expenses incident thereto, yet it is of more importance that a cause be properly tried and that a verdict reflect and evaluate the rights of the interested parties. Under our decision, the other questions raised need not be discussed.

The judgment is reversed and a new trial granted, with costs to appellants.

Bushnell, Boyles, Chandler, North, McAllister, Wiest, and Butzel, JJ., concurred.