By statutory condemnation proceedings the State, acting through the State highway commissioner, in widening US-2 in Doyle township, Schoolcraft county, acquired land on each side of the highway, which land theretofore belonged to defendants, John Sypher and Catherine Sypher, husband and wife. The commissioners appointed by the probate court to appraise damages upon hearing determined and awarded damages in the amount of $1,427.50. (See Act No. 352, Pub. Acts 1925, as amended*). Over objection of the State highway commissioner incident to his motion to set aside the commissioners' report, this award was confirmed by the probate court and payment ordered. The State highway commissioner has appealed by certiorari.
Among reasons asserted in support of the appeal are: (1) that the commissioners used the wrong method in arriving at the amount of damages, and (2) that the damages awarded were excessive and in an amount contrary to the great weight of evidence.
The Sypher farm, composed of substantially 80 acres, is bisected by US-2. The 40-acre parcel on which the dwelling and other farm buildings are located fronts 80 rods on the north side of the highway, and the other 40 acres is directly opposite on the south side of the highway. In the highway widening a strip of land 87 feet wide adjacent to the old highway was taken off from each 40-acre parcel, *Page 96 
except that for a distance in front of the farm buildings the strip taken was narrowed to 47 feet. On the north side of the highway the widening process resulted in removing 60 rods of fence and 8 or 9 apple trees, but none of the buildings or the well on this north 40 were within the land taken. There was also a well on the south 40 located on land not taken by the State. Primarily the Syphers had used their farm incident to carrying on a dairy business, and the south 40 had been used largely as a pasture. Because of a rock ledge along the south side of the highway there was only limited means of getting stock from the north 40 onto the south 40; and because of large deposits of rock blasted out in the widening process and piled along the side of the highway obstructing the view, together with the increase of traffic and speed of vehicles on the highway, the practicability of using the south 40 as formerly was very much impaired. Mr. Sypher testified that his dairy cattle, for the reasons noted, had not been pastured on the south 40 since the highway was widened; and he asserted that for his dairy purposes the south 40 was practically valueless. However, the record shows that more recently he has used the south 40 for raising crops and the pasturing of young cattle, and during one season it was rented. Obviously in connection with such use the well on the south 40 is available. The general character of the farm is disclosed by the testimony of Mr. Sypher, who upon being asked "what acreage is cleared" testified:
"There is 21 acres that is into crop. It is all cleared except about 7 acres on the north 40, and on the south 40, 9 acres is cleared and the rest is timber, wood lot and pasture."
The assessed value of the land is "about $700;" and there is testimony that assessed valuation "is *Page 97 
about 50 or 60 per cent." of actual value. In other testimony there is a wide range as to valuation. A witness in behalf of the State testified in his opinion the fair cash market value of the property prior to the widening of the highway was $1,300 to $1,400; its value after the widening $1,000 to $1,100. Another witness in behalf of the property owners testified: "I think the farm could have been reasonably sold, a year and a half before the road went through, for about $3,000 and I think now it would probably bring about $1,200." Mrs. Sypher testified that the damage she and her husband had sustained by reason of the widening of the highway was $4,000. We deem it unnecessary to refer to other testimony as to the cost of construction or value of buildings on the farm or the cost of removing the dirt and rocks piled along the side of the highway and somewhat over onto the Sypher property, the latter item being estimated by Mr. Sypher at "about $2,000."
At the hearing in the probate court as to confirming or vacating the commissioners' award of $1,427.50, the testimony convincingly disclosed that in arriving at the amount of the award the commissioners considered the testimony as to each of the following items:
 (1) Full value of south 40-acre tract ......................... $ 600.00 (2) Cost of replacing 80-foot well on south 40 ................ 160.00 (3) Value of 2.5 acres taken from north 40 at $75 per acre .... 187.50 (4) Value of a frame building on north 40 ..................... 200.00 (5) Value of 9 apple trees removed from land taken from north 40 .................................................. 190.00 (6) Value of 60 rods of fence taken from north 40 ............. 90.00 _________ Total $1,427.50 *Page 98 
Exhibit B substantially duplicates the foregoing items, and at the hearing in the probate court one of the commissioners gave the following testimony:
"Q. I show you Exhibit B. Is that the list of figures that you used to arrive at the value — before and after value?
"A. Yes, sir, that is as far as I can remember, it is about the same thing."
However, there is testimony that notwithstanding the commissioners gave consideration to the above items in arriving at their conclusion, the amount of the award was the result of their final determination as to depreciation of the value of this farm resulting from the widening of the highway. Notwithstanding this latter testimony we are convinced that the method used by the commissioners in arriving at the amount of their award was wrong and prejudicial to the State, and necessitates reversal. It is self-evident that when the commissioners awarded what was considered to be the full value of the south 40 as damages, notwithstanding the defendants still own and use all except the narrow strip taken for widening, a wrong result was obtained. Again when the commissioners allowed $160 for an assumed loss of an 80-foot well on this south 40, which defendants still possess and are using, and after the full value of the 40 had already been awarded as damages to the defendants, a palpable wrong was done.
As to the north 40 it is obvious that the commissioners allowed $75 per acre for the full amount of the land taken on that side of the highway and then added thereto $190 for 9 apple trees taken on this land and $90 for fence removed from the north 40. The highest figure under the testimony for replacing this fence was $1 per rod; but the commissioners allowed it at $1.50 per rod. Clearly the foregoing *Page 99 
resulted in an erroneous computation and an excessive award.
While we do not hold that it is universally improper to take testimony which will disclose more in detail special items of damages, such as loss of valuable trees, leaving remaining portions of property inaccessible or undesirable, et cetera (Page v. Wells, 37 Mich. 415), still the clear, safe and definite rule of measuring damages in this type of proceedings has been repeatedly announced in this State as follows:
"Where only part of parcel is taken in condemnation proceedings, just compensation is not measured by proportionate acreage, but by amount to which value of property from which it is taken is diminished." In re Widening of Fulton Street
(syllabus), 248 Mich. 13 (64 A.L.R. 1507).
See, also, In re State Highway Commissioner, 249 Mich. 530; and In re Widening Allen Road, 250 Mich. 690.
The record before us tends strongly to support appellant's contention that the damages awarded were excessive and in an amount contrary to the great weight of evidence. But in considering this phase of this appeal in the nature of certiorari we must be mindful of the following general rule which prevails in this jurisdiction.
"Where the amount awarded for property damage, in condemnation proceedings, is between the maximum and minimum amounts testified to by the witnesses for the parties, and no ground for disturbing it is shown, it is affirmed by the Supreme Court." In reWidening Harper Avenue (syllabus), 237 Mich. 684.
To the same effect see Board of Education of the City ofDetroit v. Lacroix, 239 Mich. 46; City of *Page 100 Allegan v. Vonasek, 261 Mich. 16; In re Widening of MichiganAvenue, Roosevelt to Livernois (Parcel 68), 280 Mich. 539; Inthe matter of Widening Michigan Avenue, Roosevelt to LivernoisAvenues (City of Detroit v. New Poland Baking Co.),281 Mich. 95; and In re Edward J. Jeffries Homes Housing Project,306 Mich. 638. However, application of the quoted general rule is not without some limitations. If the record discloses improper remarks of counsel, or irrelevant or immaterial testimony of such clearly prejudicial character as obviously deflected the minds of the commissioners from the issues involved and appear to have had a controlling influence upon their determination, a claim that an award is either inadequate or excessive will be considered because of the presence of such prejudicial irregularities. If under such a record the award is clearly excessive, it will be vacated. Fort Street Union Depot Co. v. Backus, 92 Mich. 33;In re Owen and Memorial Parks in City of Detroit, 244 Mich. 377
(61 A.L.R. 190.) Likewise, if under such a record the award is inadequate it will be set aside. Chicago, D. C.G.T.J.R. Co.
v. Simons, 200 Mich. 76; In re Widening Woodward Ave.,304 Mich. 417.
Under the record presented by the instant appeal consideration must be given to appellant's contention that because of the introduction of incompetent, irrelevant and prejudicial testimony a fair and impartial hearing was not had before the commissioners. The following is one instance of which appellant complains. On cross-examination of one of the condemner's witnesses, the following questions were asked:
"Q. When you were with the government did you have anything to do with the 126 acres that were condemned on US-2 for which they paid $25,000 for on US-2?
"A. No." *Page 101 
Appellant's counsel objected to the introduction of this testimony. Nothwithstanding such objection counsel for the property owners immediately asked the following question:
"Q. Do you know anything about the 126 acres that was paid for by the State of Michigan out of their State treasury, on the Michigan State highway — $26,500 for 126 acres?
"A. No."
The property referred to was not in the same county as the land in suit. No showing was made that this other property was even in the vicinity of the Sypher farm, or that there was any similarity whatever between it and the property in suit. It is too plain for argument that the purpose of getting before the commissioners, at least by innuendo, information as to large sums paid by the State for condemned property in other localities, and in all probability under very different circumstances, was to influence the commissioners in the instant case to be overliberal in their award. This was highly prejudicial to the condemner. SeeOntonagon R. Co. v. Norton, 236 Mich. 187; Commission ofConservation of Department of Conservation v. Hane, 248 Mich. 473.
Another phase of the instant proceedings of which appellant justly complains and to which he objected was the contention of the property owners' counsel that the following testimony of defendant John Sypher was admissible and proper for the commissioners' consideration in arriving at the amount of the award.
"Q. What would you say in regard to the loss to you of cutting your farm in two with the highway — the loss to you from a dairy standpoint, is per day? * * *
"A. One dollar a day." *Page 102 
The foregoing testimony was preceded by the introduction over appellant's objection of mortality tables showing Mr. Sypher's life expectancy to be a little in excess of 16 years, and that of Mrs. Sypher substantially 19 1/2 years. Counsel for appellees cite no authority in justification of attempting to prove the just measure of damages in the foregoing manner and contending before the commissioners that it was proper; and it is quite inconceivable that any such authority can be found. Obviously the amount of the award for the property taken is neither greater or less because of the fact that the property owner may be young or may be old. In either event the just measure of damage and the proper method of determining the same is that which we have already stated. As to prejudicial remarks or contentions of counsel constituting just grounds for vacating an award, see Inre Widening of Woodward Avenue, 297 Mich. 235.
We deem it unnecessary to review other matters of which appellant complains because the errors and irregularities in the proceedings before the commissioners already noted necessitate vacating the award and remanding the case for further hearing before new commissioners to be appointed by the probate court. It is so ordered, with costs of this Court to appellant.
STARR, WIEST, BUTZEL, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.
* See 1 Comp. Laws 1929, § 3884 et seq. (Comp. Laws Supp. 1940, 1943, § 3884 et seq., Stat. Ann. and Stat. Ann. 1944 Cum. Supp. § 8.171 et seq.). — REPORTER. *Page 103