## STANDARD OIL CO. *v.* PAYNE.

1. RAILROADS—NEGLIGENCE—EFFECT OF CONTRACT EXEMPTING FROM LIABILITY.

Where defendant's engineer on the main track was guilty of negligence in disregarding an open switch signal and ran his train onto a siding on which defendant's switch engine was delivering five cars of gasoline to plaintiff, which resulted in a collision and destruction of plaintiff's buildings by fire, defendant was liable for the loss notwithstanding a clause in a contract between it and plaintiff for the construction and maintenance of the side track exempting defendant from liability for "loss or damage by fire upon premises owned or occupied by second party [plaintiff] arising from the operation of said track for benefit of second party," since defendant's negligence, and not the fact that the siding was being used for plaintiff's benefit, was the proximate cause of the loss.

2. SAME—LIABILITY FOR INTEREST ON LOSS DURING FEDERAL CONTROL.

Under section 10 of the Federal control act (40 U. S. Stat. p. 451) providing that carriers should still be liable as such under the State law, and providing further that it should be no defense that the carrier was an instrumentality of the government while under Federal control, the director general of railroads is liable for interest on a loss caused by negligent operation from the time of the loss to the date of the judgment; interest in this State not being allowed as a punishment but as a legal compensation for lost use.

Error to Kent; Brown (William B.), J. Submitted June 8, 1922. (Docket No. 45.) Decided December 5, 1922.

Case by the Standard Oil Company against John Barton Payne, director general of railroads, for the

negligent burning of plaintiff's buildings.   Judgment
for plaintiff.   Defendant brings error.   Affirmed.

*Samuel H. Kelley* (*Alexis C. Angell* and *Evan Shelby*,
of counsel), for appellant.

*J. T. & T. F. McAllister*, for appellee.

SHARPE, J.   The plaintiff owns land in Grand
Rapids on which it has operated a station for the dis-
tribution of its petroleum products for a number of
years.   On its southerly side it abuts on the right
of way of the New York Central Railroad Company.
The Lake Shore & Michigan Southern Railway Com-
pany, the predecessor in title of the New York Cen-
tral, had constructed a side track about 900 feet in
length on the northerly side of its right of way ad-
joining plaintiff's land, which passed very close to the
buildings thereon.   On the morning of July 18, 1919,
the defendant, then operating said railroad under the
Federal control act and the orders made pursuant
thereto, undertook to deliver to plaintiff upon this sid-
ing five tank cars loaded with gasoline.   An empty
car stood upon the siding.   A switching engine,
moving tender first, drew these cars westerly past the
siding.   The switch was then opened and the cars
pushed into the siding and coupled to the box car.
The cars were then drawn out on to the main track,
the switch closed, the box car pushed past the point
of the switch and left there.   The tank cars were
then pulled past the switch, the switch again opened
and these cars again pushed into the siding to be
placed or spotted for unloading.   While the train
crew were so engaged, they heard the sound of a train
on the main track approaching from the west.   The
switch had been left open.   The switch signal and the
box car standing on the main track were in plain
view of the approaching train for a distance of 1,100

feet. The engineer of the switching crew endeavored to attract the attention of the engineer on the approaching train by sharp blasts of his whistle. It came along apparently without reducing its speed, entered the side track through the open switch, and crashed into the tender, locomotive and tank cars, causing a disastrous fire resulting in a loss to the admitted amount of $95,000, to recover which this action is brought. The defense is based on an agreement entered into between the Lake Shore road and the plaintiff on September 8, 1911, under which exemption from liability is claimed. A printed blank prepared for use when a side track is to be put in on a shipper's premises was used in its preparation. Inappropriate parts were stricken out, interlineations made, and words added. A plat of the ground showing the location of the side track and plaintiff's buildings, etc., adjacent thereto was attached. The railroad company agreed to maintain the track at its own expense and reserved the right to use it for other purposes when not occupied by cars which plaintiff was loading or unloading.

The paragraph relied on by defendant as a defense to this action reads as follows:

(The word in parentheses was stricken out of the printed form and the words in italics were inserted therein.)

"The second party will indemnify **and** save the first party harmless from—

"(*a*) All loss or damage by fire upon premises owned or occupied by second party arising from the operation of said track *for benefit of second party,* whether caused by the negligence of first party or otherwise, except such as may be caused to the first party's property solely by its own negligence.

"(*b*) All other loss, damage or injury to persons or property on the premises of second party, by reason of said track, or the (construction), maintenance or operation thereof *for benefit of second party,* which

is not due to the sole negligence of the first party, its agent or employees."

Under this contract the defendant is exempt from liability for—

"loss or damage by fire upon premises owned or occupied by second party (plaintiff) arising from the operation of said track for benefit of second party."

Plaintiff insists that—

"a reasonable construction of this clause of this contract means this—that the loss and damages must arise from some act that was being performed for the benefit of the plaintiff at the time, and that this act must be the cause of the fire and damage."

Defendant's counsel say:

"These words mean 'having as a cause, without which the result would not have been produced, the operation of the side track.'"

The defendant had the right to use the side track for other purposes. The only operation of the track which could be for the benefit of plaintiff would be when locomotives and cars were being propelled thereon for the purpose of placing cars for loading and unloading and removing them thereafter. Any other use of the track by defendant would not be within the terms of the contractual provision. Defendant's employees, the switching crew, caused the locomotive and tank cars to be placed on this siding on the morning of July 18th for the purpose of "spotting" them at plaintiff's warehouse. They left the switch open. This use of the sidetrack was for the benefit of plaintiff. No damage was occasioned thereby. Along came the freight train on the main track. It had no occasion to enter the siding. It did so enter, not for the purpose of using it for the benefit of plaintiff or for any purpose in furtherance of the business of either plaintiff or defendant, but because of the

negligence of its engineer in failing to observe that the switch was open, notwithstanding the switch signal and the presence of the box car in plain view on the main track.    That his action in doing so was clearly negligent is not denied.    His train collided with and wrecked the switching train.    The fire followed as a direct result thereof.    This negligent conduct of the engineer was therefore the proximate cause of the damage plaintiff sustained on account of the fire.    Defendant's counsel so concede in their reply brief:

"The loss was due, it is true, to the negligence of the defendant's engineer on the freight train, but except for the use of the side track for the benefit of the plaintiff at the time, his act would not have caused the fire."

Had there been no contract, the liability of the defendant would have been clearly established. Plaintiff's counsel urge that the exemption from liability provided for in the contract does not relieve unless it appears that the use of the side track for plaintiff's benefit was the proximate cause of the loss.

In 10 C. J. p. 125, it is said:

"Necessity That Excepted Cause be Proximate Cause—a. In General.    Where the carrier relies on one of the exceptions to his common-law liability, it must appear, in order to excuse him, that the exceptional cause, such as an act of God, or the like, was the immediate or proximate, and not the remote, cause of the loss.    And while it must be true, as a general proposition, that, although the carrier is in some way negligent, if such negligence does not contribute to the loss which is due to an excepted cause, the carrier is not liable, it is very generally declared that, if the negligence of the carrier concurs with an act of God in producing a loss or injury, the carrier is not exempted from liability by showing that the immediate cause was the act of God, or some other excepted cause; or, as otherwise expressed, the carrier is responsible where the loss is caused by an act

of God or other excepted cause, if the carrier's negligence mingles with it as an active and co-operative cause."

"If the fault or negligence of the carrier concurs or co-operates in causing the loss the rule that the act of God exonerates the carrier from liability will not apply, for the negligence of the carrier will be deemed the proximate cause of the loss. The carrier is exonerated from liability only in cases where the act of God is the proximate cause of the loss, and not where the act of God is a remote cause, so that the burden is on the carrier to prove that the act of God was the proximate cause of the loss." 4 Elliott on Railroads (3d Ed.), § 2204.

"It is universally agreed that, if the damage is caused by the concurring force of the defendant's negligence and some other cause, for which he is not responsible, including the 'act of God,' * * * the defendant is nevertheless responsible if his negligence is one of the proximate causes of the damage." 1 Shearman & Redfield on Negligence (6th Ed.), § 39.

Many cases are cited to support the rule as stated, in which freezing, floods, tornadoes and the like were involved. The later cases are collected and discussed in *St. Louis, etc., R. Co.* v. *Dreyfus*, L. R. A. 1915D, 547 (42 Okla. 401, 141 Pac. 773), and the note thereto. The reasoning on which the rule rests is that provision for such exemption is presumed to have been agreed upon by the parties at the time the contract for carriage is made and the law reads the contract as though the provision was inserted therein. We think this rule of law equally applicable to the contract here relied on. It exempted defendant from liability in case of a loss arising from the operation of the track for plaintiff's benefit. An ordinary contract of carriage exempts from liability for loss arising from or happening by reason of an act of God. If a carrier may only have the benefit of this defense when it appears that the "act of God" is the proxi-

mate cause of the loss, must it not also appear when the contractual provision is relied on as a defense that the act of the switching crew in leaving the switch open, an act arising from "the operation of the track" for plaintiff's benefit, was the proximate cause of plaintiff's loss? We feel constrained to so hold. While the loss would not have occurred had not the switch been left open, the loss in the cases cited to sustain the rule would not have occurred without the happening of the untoward event, spoken of as the "act of God." In this case, as in those, the act relied on as a defense would not have caused a loss but for the intervention of a new agency, unrelated to that relied on for exemption, and which in itself was the proximate cause of the loss.

There was included in the judgment interest on the amount of the loss, as conceded, from the time it occurred to the date of the judgment. Of this defendant complains. Counsel insist that this action is, in effect, one brought against the United States and that interest is not recoverable on a claim against the government unless specially provided for by statute or contract. *United States* v. *North American Co.*, 253 U. S. 330, 336 (40 Sup. Ct. 518). Undoubtedly, the general rule is as stated. Counsel for plaintiff claim that under the provisions of the several acts of congress and the proclamations of the president by which the property of the railroads passed into the possession of the government and was thereafter operated by the director general, this rule does not apply. They rely on the holding in *Missouri Pac. R. Co.* v. *Ault*, 256 U. S. 554 (41 Sup. Ct. 593), as sustaining this claim. Counsel for defendant urge that what was said in that case was *obiter dictum* as the question of the allowance of interest was not involved. We are impressed, however, that the reasoning employed in disposing of the questions there

presented applies with equal force to the allowance of interest in a case of this kind. Had this action been brought against the railroad company instead of against the director general, interest as allowed would have been recoverable. *Sayre* v. *Railway Co.*, 205 Mich. 294. Section 10 of what is known as the "Federal control act" (40 U. S. Stat. p. 451) reads as follows:

"That carriers while under Federal control shall be subject to all laws and liabilities as common carriers, whether arising under State or Federal laws or at common law, except in so far as may be inconsistent with the provisions of this act or any other act applicable to such Federal control or with any order of the president. Actions at law or suits in equity may be brought by and against such carriers and judgments rendered as now provided by law; and in any action at law or suit in equity against the carrier, no defense shall be made thereto upon the ground that the carrier is an instrumentality or agency of the Federal government.   *   *   *   But no process, mesne or final, shall be levied against any property under such Federal control."

Under this section, carriers while under Federal control might be sued in the manner then "provided by law" and were made subject to "all laws and liabilities as common carriers, whether arising under State or Federal laws or at common law," except in certain specified cases not here controlling. It further provides that no defense shall be made to any action brought "upon the ground that the carrier is an instrumentality or agency of the Federal government." The claim here made by the defendant is, we think, in direct conflict with this provision. Under the law in this State, the defendant is liable for the payment of the interest allowed. He resists such allowance because he is, as director general, "an instrumentality or agency of the Federal government." In the *Ault*

*Case, supra,* Mr. Justice Brandeis, in considering the effect of the provisions in section 10, said:

"The government was to operate the carriers, but the usual immunity of the sovereign from legal liability was not to prevent the enforcement of liabilities ordinarily incident to the operation of carriers. The situation was analogous to that which would exist if there were a general receivership of each transportation system. Operation was to be continued as theretofore with the old personnel, subject to change by executive order. The courts were to go on entertaining suits and entering judgments under existing law, but the property in the hands of the president for war purposes was not to be disturbed. With that exception the substantial legal rights of persons having dealings with the carriers were not to be affected by the change of control.

"This purpose congress accomplished by providing that 'carriers while under Federal control' should remain subject to all then existing laws and liabilities and that they might sue and be sued as theretofore."

Interest in this State is not allowed as a punishment. It "is allowed as a legal compensation for lost use." *McGuire* v. *Galligan,* 53 Mich. 453. Further quoting from the *Ault Case:*

"Wherever the law permitted compensatory damages they may be collected against the carrier while under Federal control. Such damages may reasonably include interest and costs."

Many other interesting questions are discussed by counsel. In view of the conclusion we have reached, it is not necessary to consider them.

The judgment is affirmed.

FELLOWS, C. J., and WIEST, McDONALD, BIRD, and STEERE, JJ., concurred. CLARK and MOORE, JJ., did not sit.