BANISH v. CITY OF HAMTRAMCK.

1. MUNICIPAL CORPORATIONS—CHARTER—ORDINANCES.

The charter of a city is its fundamental law, and all ordinances in conflict with it are void upon the principle that a statute which contravenes a constitution must fall.

2. SAME—CHARTER—PAY.

Attempted distinction by defendant city in ordinances between increases in "regular salary", to which retirees are entitled, and "any other pay", to which retirees would not be entitled, is foreclosed by city's charter which speaks simply in terms of "pay" (Hamtramck City Charter, chap 13, § 4).

3. SAME—CHARTER—WORDS AND PHRASES.

The term "pay" as used in the charter clause pertaining to increases of pay of retirees of "1/2 of the pay" for ranks changed is the regular compensation currently paid to those of the rank held by the retiree at the time of his retirement (Hamtramck City Charter, chap 13, § 4).

4. SAME—COMPENSATION—CIVIL SERVANTS.

"In service" pay and "hazard risk" pay held, regular compensation currently paid to policemen and firemen of city when computing retirement pay under city charter (Hamtramck City Charter, chap 13, § 4).

REFERENCES FOR POINTS IN HEADNOTES

[1] 37 Am Jur, Municipal Corporations § 155 et seq.
[2, 3] 15 Am Jur 2d, Civil Service § 29; 37 Am Jur, Municipal Corporations § 255 et seq.
[4, 6–10] 40 Am Jur, Pensions §§ 18, 19.
[5] 15 Am Jur 2d, Civil Service § 31.
[11, 13–15, 19–21] 22 Am Jur 2d, Damages § 179 et seq.
[12] 50 Am Jur, Statutes § 475 et seq.
[16–18] 37 Am Jur, Municipal Corporations § 256.
[22] 5 Am Jur 2d, Appeal and Error § 1009.

5. SAME—CIVIL SERVANTS—HOLIDAY PAY.

Holiday pay for city policemen and firemen, equal to 8 times the maximum daily rate of pay, and payable 1/8 on the first payday after each of 8 designated holidays, *held*, part of regular compensation when computing retiree's pay under city charter (Hamtramck City Charter, chap 13, § 4).

6. SAME—ORDINANCE—CIVIL SERVANTS—LONGEVITY PAY.

Longevity pay, defined by ordinance as not part of base or reward based on mere length of service or seniority but rather incentive pay designed to retain and reward firemen and police officers for future service, *held*, part of pay of policemen and firemen to be considered in computing retirement benefits (Hamtramck City Charter, chap 13, § 4).

7. SAME—POLICEMEN   AND   FIREMEN—COMPENSATION—ALLOWANCE FOR UNIFORMS.

Allowance for uniforms for policemen and firemen, which saves an active service employee a corresponding amount, and in a sense increases his pay, *held*, nothing more than a reimbursement for an actual out-of-pocket expense incurred in the performance of duty, and hence not pay to be used in computing retirement benefits (Hamtramck City Charter, chap 13, § 4).

8. SAME—CONTRIBUTIONS FOR PENSIONS—RETIREMENT PAY.

Fact that city did not deduct a percentage as contribution for pensions from certain elements of pay of its active employees, such as in service, hazard risk, and longevity, the same as it made deductions from regular salary would not prevent such specified elements from being considered as compensation to half of which retirees would be entitled pursuant to city charter (Hamtramck City Charter, chap 13, § 4).

9. SAME—LONGEVITY PAY—RETIREMENT PAY.

Longevity pay to city policemen and firemen, regularly paid qualified employees under the program, constituted pay which would be includible in computing compensation payable to retirees at 1/2 of compensation for rank at time of retirement (Hamtramck City Charter, chap 13, § 4).

10. SAME—RETIREMENT—LACHES.

Laches on part of city employee retirees *held*, to have been properly rejected by trial judge as a defense in their proceeding to compel payment of 1/2 of increases paid to active employees of equal rank in city employment as required by city charter (Hamtramck City Charter, chap 13, § 4).

11. INTEREST—DATE OF FILING COMPLAINT.

Interest on any money recovered in a civil action shall be calculated from the date of filing the complaint (CLS 1961, § 600.6013, as amended by PA 1965, No 240).

12. SAME—AMENDMENT OF STATUTE—PROSPECTIVE OPERATION.

Amendment to statute by which interest on judgment is allowed from date of filing complaint does not apply to complaints filed prior to amendment's effective date, although the judgment itself may be entered subsequent to the effective date (CLS 1961, § 600.6013, as amended by PA 1965, No 240).

13. DAMAGES—INTEREST.

Disallowance of interest on a damage award to avoid excessive compensation is appropriate in cases where the award of damages is essentially discretionary, ungoverned by any standard other than overall reasonableness, not because the damages are unliquidated or otherwise uncertain, but because to add interest would be redundant.

14. SAME—INTEREST—FULL COMPENSATION.

Interest should be allowed as part of damages where necessary in order to accomplish full compensation.

15. INTEREST—PUNISHMENT—LOSS OF USE.

Interest is not allowed as a punishment but is allowed as a legal compensation for lost use.

16. SAME—PAY—RETIREE.

Allowance of interest on claim of retirees from date of demand giving the class of retired policemen, firemen, and members of police signal and fire alarm systems 50% of all pay increases, including "in service" pay increase hazard risk pay, 50% of paid holidays, and longevity *held*, proper, since not to allow interest would deny full compensation to retirees as provided in city charter (Hamtramck City Charter, chap 13, § 4).

17. SAME—PAY INCREASES—DELAY IN PAYMENT.

Delay in payment to retirees of increases in pay to which they were entitled under city charter provided the city with the use of plaintiffs' money and denied plaintiffs the use of the funds, and the addition of interest as part of the damage claim is essential to avoid inadequate compensation (Hamtramck City Charter, chap 13, § 4).

18. SAME—MUNICIPAL CORPORATIONS.

Interest on a debt may be recovered from a municipal corporation.

19. SAME—DEMAND—START RUNNING OF INTEREST.

A demand for payment must be made to proper authority to start the running of interest on a debt, unless demand would be futile and then it is not required.

20. SAME—DEMAND.

Petition filed with city council by retired policemen, firemen, and members of police signal and fire alarm systems seeking pay increases was a demand sufficient to start interest running on that day on payments to which they were entitled under city charter (Hamtramck City Charter, chap 13, § 4).

21. SAME—DEMAND—REJECTION.

Members of class who did not join in petition for payment of arrearages in retirement payments were entitled to interest from date city council rejected petition by claimant retirees (Hamtramck City Charter, chap 13, § 4).

22. COSTS—RETIREES—PAY INCREASES—PUBLIC QUESTION.

No costs are allowed where retired policemen, firemen and retired members of police signal and fire alarm systems of a city seek writ of mandamus requiring payment of increased pension benefits, a public question being involved (Hamtramck City Charter, chap 13, § 4).

Appeal from Wayne; Burdick (Benjamin D.), J. Submitted Division 1 June 7, 1967, at Detroit. (Docket No. 2,658.) Decided March 18, 1968. Rehearing denied May 15, 1968. Leave to appeal denied September 30, 1968. See 381 Mich 779.

Complaint in class action by Edward Banish and 43 others against the City of Hamtramck, its mayor, treasurer, clerk, controller, and common council, for a writ of mandamus requiring payment of increased pension benefits. Writ granted in part. Defendants appeal. Plaintiffs cross-appeal. Affirmed in part and reversed in part.

*Con. S. Gryczka* (*Theodore R. Robbins,* of counsel), for plaintiff.

*Charles W. Kotulski,* City Attorney, *Stanley J. Draganski,* Assistant City Attorney, and *Edmund E. Torcellini,* Assistant City Attorney, for defendant.

LEVIN, J. Plaintiffs are retired policemen and firemen and retired members of the police signal and fire alarm systems of the city of Hamtramck. Under the provisions of the city charter, they are entitled to receive a pension at the rate of one-half the pay of the rank in which they served at the time of retirement. The charter provides that in the event of any change at any time after retirement "in such rate of pay" the pension thereafter will be "at the rate of 1/2 the pay for said rank so changed."[1]

The charter provision was adopted in 1938, and from the time of its adoption through the fiscal year preceding 1959–1960 pensioners received their 50% share of adjustments whenever pay changes were approved for persons on active duty. For the fiscal year 1959–1960 the common council adopted the recommendation of its budget board increasing the pay of its class B employees to correspond to that paid in the city of Detroit, but providing that retirees shall not receive one-half of the increment. Such proviso was expressed as follows:

"that the basic pay of the Class B employees for all intents and purposes shall be the same as was prevailing in the 1958–1959 fiscal year and that any

---

[1] "Every person subject to retirement as above set forth shall be retired on a pension at the rate of 1/2 of the pay of the rank in which he was serving at the time of retirement, or his disability was caused, *and in the event of any change at any time thereafter in said rate of pay, then at the rate of 1/2 the pay for said rank so changed.*" (Emphasis supplied.) (Charter of the City of Hamtramck, chapter 13, § 4.)

*amounts paid over and above such basic pay shall be construed as payments made only while in active service* for the city of Hamtramck and *not constituting part of any salary upon which pension payments are to be computed and paid in the future.*" (Emphasis added.)

The parties refer to the increment over basic pay, in 1959–1960 and later years paid only to those in active service, as "in service pay."

The plaintiffs, and the other members of the class in whose behalf this suit was instituted, are all class B employees.

The separate designation for "in service pay" set forth for the first time in the 1959–1960 budget also appears in subsequent budgets. In the 1964–1965 budget, "in service pay" was supplemented by "hazard risk pay," a designation continued in the 1965–1966 budget. During these years employees in active service received an annual clothing or uniform allowance, annual holiday pay and annual longevity pay benefits not reflected in the pensions of retired employees.

The retirees made informal efforts to obtain from the city payment of 50% of these amounts. When such efforts failed a petition demanding payment was filed with the common council on August 24, 1964. The petition was rejected on September 29, 1964.

Plaintiffs' complaint was filed March 1, 1965, and sought a writ of mandamus requiring payment of increased pension benefits. Defendants answered that the charter provision means "one-half of *regular salary* and not any *other* pay", that the common council of the city of Hamtramck might authorize compensation over and above the "regular salary" payable only to active members of the police and fire departments and signal and alarm systems, and that

in service, hazard risk, holiday and longevity pay and clothing and uniform allowances were not part of regular salary.

One of the city officers who was conversant with the matter testified that the action of the common council in adopting the 1959–1960 recommendation of the budget board was a temporary austerity measure due to loss of revenue; the intent was to restore to the retirees full pension benefits; and when the city adopted an income tax ordinance substantial sums were set aside for pension benefit payments once the courts passed on the constitutionality of the income tax ordinance.

There was testimony that the nature of the work of policemen and firemen had not changed, and that the hazard of those positions was not fundamentally different from the hazard faced by the retirees when they served. Deductions were made from the pay of active service employees for city and federal income tax in respect to the portions of their pay designated in service, hazard risk, longevity, and holiday; there was no such deduction in regard to the clothing or uniform allowance.

The trial judge found that both hazard risk and in service pay were increases in regular compensation, and that such increases in pay were so labeled to circumvent the charter requirements that retirees receive one-half thereof. He added: "the same goes for holiday pay and the same goes for uniforms. This is simply giving increases by virtue of different titles."

On July 14, 1966, a judgment was entered by the trial judge adjudicating this a class action and that the members of the class—plaintiffs and all persons who had retired as policemen, firemen, and members of the police signal and fire alarm systems—were entitled, as part of their retirement pensions, to:

50% "of all pay increases, including 'in service pay increase' and 'hazard risk pay'; 50% of all uniform allowances; 50% of all paid holidays"; but they "shall not recover any part of the longevity payments made to those of the same rank or grade on active duty".

The judgment declared the increase in benefits retroactive to March 1, 1959, and covered benefits through the fiscal year 1965–1966. It also provided that, once computed, individual arrearages shall be set forth in a supplemental judgment and bear interest at 5% per annum from the date of said supplemental judgment, except that in the case of deceased employees interest shall not run until after appointment of a special or general administrator to whom payment may be made.

The defendants appeal. The plaintiffs cross-appeal, claiming a right to 50% of longevity pay and interest from the date [August 24, 1964] the petition demanding payment was filed with the city council.

## I.

The charter of a city is its fundamental law, and all ordinances in conflict therewith are null and void, upon the principle that a statute which contravenes a constitution must fall. *Mayor of City of Dearborn* v. *Dearborn Retirement Board of Trustees* (1946), 315 Mich 18, 24; *Thiesen* v. *Dearborn City Council* (1948), 320 Mich 446; *Brady* v. *City of Detroit* (1958), 353 Mich 243.[2]

The distinction sought to be created between "regular salary" and "any other pay" is clearly fore-

---

[2] See, also, *Streat* v. *Vermilya* (1934), 268 Mich 1, 6, stating that the charter of a city is the organic law thereof and is to be considered as other organic acts are considered; and *Paulsen* v. *Portland* (1893), 149 US 30, 38 (13 S Ct 750, 753, 37 L ed 637, 640): "The city is a miniature State, the council is its legislature, the charter is its constitution."

closed by the charter language, which speaks simply in terms of "pay." A fair reading of the charter language requires that the term "pay," as used in the clause "1/2 the pay for said rank so changed", be interpreted to mean the regular compensation currently paid to those of the rank held by the retiree at the time of his retirement. The crucial question, then, is what is regular compensation? We have no hesitancy in holding, on the facts of this case, that in service pay and hazard risk pay are regular compensation. Those terms were devised in an attempt to take two bites out of the cherry with the deliberate purpose, and none other, of depriving retirees of the full pension rights which the charter mandates.

The charter provision requiring escalation or reduction of retirement pay expresses a purpose that retirement benefits will, in fact, escalate and reduce as the pay of the rank in which the retiree was serving at the time of retirement changes. The defendants' argument would permit the city to keep the retirees' pay constant—or, indeed, to effect only reductions and no increases—by simply adopting the correct nomenclature and dividing the pay of active service employees into categories plausibly packaged and labeled. We look beyond form to substance.

Holiday pay is defined by Ordinance No 246, approved November 12, 1958, as a "sum equal to 8 times the maximum daily rate of pay," payable 1/8 on the first payday after each of 8 designated holidays. We hold that holiday pay is part of regular compensation and, hence, pay.

As to longevity pay, various ordinances provide for it after 11 years of service, of which a minimum of 6 years has been accumulated in the same basic class or rank. While approval of the director of public safety, or the chief of the respective department, of the employee's "conduct of work perform-

ance" is required for longevity pay, the only record evidence is that a substantial number of employees whose years of service qualified them for longevity pay did in fact receive it. The maximum longevity pay increase is earned when one reaches 16 years of service. Since one must serve for 20 years to be eligible for retirement, it appears that a substantial number of the plaintiffs and members of the class would have received longevity pay had the ordinances concerning longevity pay been adopted prior to their retirement.

The longevity pay ordinances provide that longevity pay is not part of "base pay nor is it a reward based on mere length of service or seniority. It is incentive pay designed to retain and reward the firemen and police officers for future service who continue to serve meritoriously." Is that not a definition of compensation—a consideration paid as an incentive to performance of good and faithful service? The fact that the city finds it necessary or desirable to pay greater compensation to those who have served long and faithfully does not make such payment less than compensation. The amounts so paid are not gratuities.

Whether longevity pay is part of the pay of the rank formerly held by an individual retired employee depends upon his rank, and part of his "rank" is whether he served 11 years, 6 years in grade, and whether he would have received a satisfactory conduct recommendation. There is no reason to anticipate difficulty in resolving on remand that factual issue as to the retired employee plaintiffs and others in the class. Determination of the relevant facts in that regard should prove no greater problem than the mathematical computations required on remand.

Ordinance No 247, approved November 12, 1958, provides a "clothing allowance" of $100 for 1959, and

$200 annually thereafter to all members of the fire and police departments. This was repealed by Ordinance No 259, approved May 31, 1960, providing an allowance for uniform replacement not to exceed $75 per year upon proof of actual expenditure therefor. Ordinance No 259 was rescinded by Ordinance No 284 on July 30, 1963.

Had the city of Hamtramck furnished uniforms to be worn by the employees during their time of service, we doubt whether it would be suggested the value of the uniforms was compensation. The form of payment is not controlling—whether dollars or coconuts. What is important is whether the payment is a payment for services rendered or to be rendered.

We have considered, but decline to follow *Anderson* v. *City of Long Beach* (1959), 171 Cal App 2d 699, 702 (341 P2d 43, 46) where the court held that since the effect of providing a uniform allowance to active service employees was to add the amount of the allowance to their pay, such amount should be taken into account in computing the fluctuating pensions of retirees. It is a close question and one that perhaps could be decided either way. The amount of the uniform allowance does save the active service employee a corresponding amount and thus, in a sense, increases his pay. However, there is no evidence that the uniform allowance was intended or paid as compensation, or that anyone received the allowance who did not wear a uniform, or that, to state it differently, the allowance was anything more than reimbursement for an actual out-of-pocket expense necessarily incurred in the performance of duty. We do not think that every fringe benefit provided active service employees is necessarily "pay". If the uniform allowance were larger or if there were evidence that the allowance was paid as

compensation and regarded by the parties as such, we might have taken a different view.

We are not impressed by the fact that the city did not deduct the 5% contribution toward pensions, required of active service employees, from the in service, hazard risk, longevity or other payments referred to. Failure to have done so merely reflects an effort on the part of the city to be consistent with its own characterization that such portions of the compensation program are not "pay."[3] It would have been most ingenuous to have deducted the 5% from in service and hazard risk pay on the ground that they were "pay," and then to have claimed that such payments were not "pay" for the purpose of computing retirement allowances. The failure to deduct such amounts is merely part of the attempt to relabel the container without changing its contents.

We must focus on what is in the container and not on what the city's etymologists choose to call it from time to time. As used in the clause "1/2 the pay for said rank so changed", "pay" means the regular compensation currently paid to those of the rank held by the retiree at the time of his retirement, including longevity compensation currently paid to those of the retirees' rank that, had compensation of that kind been part of the compensation program at the time of the retiree's retirement, the retiree would have been entitled to receive.

Defendants' reliance on *Hestand* v. *Erke* (1957), 227 Ark 309 (298 SW2d 44), is misplaced. The court simply concluded on the facts in that case that payments for overtime were not part of the retiree's

---

[3] We also note that there have been periods of time when no 5% deductions were made from the salaries of those on active duty, and that pensions paid to retirees have not been funded but rather have been treated as an annual expense included in the budget.

regular compensation and, hence, were not part of the "pay" upon which his retirement benefit was to be computed. The retiree had received the overtime compensation only in the closing months of his employment. All the payments in the case now before us were part of customary or regular compensation.

Defendants also cite *White* v. *Hussey* (1949 Sup), 115 NYS2d 515, affirmed without opinion 276 App Div 1028 (95 NYS2d 539). In that case the retired employee was paid an additional $650 per year on condition that said amount would not be included in computing his pension. The court held the city had the power to impose that condition and the employee, having agreed to the condition, was bound thereby. It is not contended here that the retirees agreed to any reduction in their benefits.

In *State, ex rel. King* v. *Abbott* (1946), 43 Del (4 Terry) 472, 480 (48 A2d 745, 748), a cost of living increase and incentive pay were held to be part of "salary" for the purpose of computing pensions because they were "fixed compensation, paid relator at regular intervals" for services. In *Abbott* v. *City of Los Angeles* (1960), 178 Cal App 2d 204 (3 Cal Rptr 127), it was held that payments made to substantially all active service employees, called "longevity pay," should be included in the computation of pensions required to be based upon the amounts paid active service employees.

The defendants also contend that the plaintiffs and the other members of the class are guilty of laches. We have examined the record and are satisfied the trial judge did not err in rejecting that defense.

## II.

This leaves the question of prejudgment interest, *i.e.,* interest allowed as damages, as distinguished from statutory interest. We note that under CLS

1961, § 600.6013, as amended by PA 1965, No 240
(Stat Ann 1965 Cum Supp § 27A.6013), interest on
a judgment may now be recovered from the date the
complaint is filed. Our Court has held that the
amended statute does not apply to complaints filed
prior to the amendment's effective date, even though
the judgment itself be entered subsequent to the
effective date. *Swift* v. *Dodson* (1967), 6 Mich App
480. In *Swift,* our Court carefully noted the dis-
tinction between interest on a judgment, which is
purely statutory, and interest included as an element
of damage.[4] We are now concerned with the latter.
The trial judge declined to allow interest until com-
putation of the sums due the plaintiffs and the other
members of the class. Plaintiffs and the class seek
interest at the legal rate from the date, August 24,
1964, they filed with the Hamtramck city council the
previously mentioned petition requesting payment
of 50% of the various increments awarded active
service employees.

Each of the contending parties presents an array
of cases tending to support his point of view. In
our effort to achieve a meaningful explanation, we
have been greatly aided by Charles T. McCormick's
perceptive work, McCormick on Damages (1935),
§§ 50–59; pp 205–233. He explains that when we in-
herited England's common law, legal thinking had
just recently gone beyond the theretofore accepted
view that all compensation for the use of money was
to be condemned as usury. Through a redefinition
of terms, "usury" had been gradually restricted to

---

[4] The distinction has not always been observed. In *Kermott* v.
*Ayer* (1863), 11 Mich 181, 184, the Court in an entirely different
context stated: "Interest in Michigan is purely statutory." That
statement has been repeated where interest has not been allowed
as part of the damage, *Fitzpatrick* v. *Ritzenhein* (1962), 367 Mich
326, 333; *Township of Royal Oak* v. *City of Berkley* (1944), 309 Mich
572, 583; and in *Mitchell* v. *Reolds Farms Co.* (1934), 268 Mich
301, 311, where interest was allowed.

excessive exactions for the use of money, and the term "interest" had come to describe permissible compensation.

"The stigma of religious and moral taboos, inherited from the dark era of prohibition, remained to stunt and distort the growth of all branches of the legal rules about compensation for delay in paying money or damages. This ancient prejudice has been singularly unfortunate in restricting the rational development of the practice of allowing interest as damages." McCormick on Damages, § 51, page 209.

The concept that interest should be allowed as part of the damages for a delay in paying the principal damages was not readily accepted. As the law developed exceptions were made, and in particular cases the jury, or the trial judge as a matter of discretion, was permitted to allow interest as part of the damages. As case law defined those areas in which interest would be assessed as part of the damages, restrictions were placed on the unfettered exercise of jury and trial judge discretion.

It came to be a familiar principle that generally interest will be included as a matter of right where the amount claimed is "liquidated," but not where the claim is "unliquidated." Definitions of "liquidated" were not always consistent, and close cases created much confusion, until even the liquidated-unliquidated standard approached coalescence.[5] In *Cree Coach Company* v. *Wolverine Insurance Company* (1962), 366 Mich 449, interest was allowed from the date of loss on an unliquidated amount which, said the Court, "was known or could have been easily

---

[5] See discussion in *Funkhouser* v. *J. B. Preston Company, Inc.*, (1933), 290 US 163, 168 (54 S Ct 134, 136, 78 L ed 243, 246); *Cochrane* v. *Forbes* (1929), 267 Mass 417 (166 NE 752); *Midland Valley R. Co.* v. *Price* (1927), 127 Okla 106, 113 (260 P 26, 31). Compare *Brown* v. *Home Development Co.* (1941), 129 NJ Eq 172, 177, 178 (18 A2d 742, 746).

ascertained" (p 463). McCormick contends that interest should be includible except where the damages are "at large" and thus, in the last analysis, depend upon the discretion of the trier of fact uncontrolled by any meaningful standard except overall reasonableness. McCormick on Damages, § 57, page 226.

The cases are in conflict. Interest has been denied on the ground that the claim was unliquidated.[6] Nevertheless, interest has been allowed on unliquidated claims. *Cree Coach Company* v. *Wolverine Insurance Company, supra.*[7] In a relatively early case, an action against a railway company, interest was allowed as part of the damage to abutting property.

"The old rule undoubtedly was that interest could not be allowed upon unliquidated damages, and, in actions of tort, damages are of course unliquidated. The tendency of courts has been, however, to set this rule aside, and adopt the more reasonable one, in cases of injury to property, that the jury must first determine the actual damage sustained, and allow interest upon that sum from its date. This Court has adopted this rule in the following cases: *Lucas* v. *Wattles,* 49 Mich 380; *Kendrick* v. *Towle,* 60 Mich 363, 368. Some cases hold that it is discretionary

---

[6] *Great Lakes Steel Corp.* v. *Detroit, T. & I. R. Co.* (1947), 317 Mich 1, 18; *Coburn* v. *The Muskegon Booming Company* (1888), 72 Mich 134, 149. In actions for services rendered, interest has been denied as a matter of law. *In re Snow's Estate* (1947), 319 Mich 333, 340; *Antonoff* v. *Basso* (1956), 347 Mich 18, 32. Contrast *Sweeney* v. *Adam Groth Co.* (1934), 269 Mich 436, 440. Similarly, see *Fitzpatrick* v. *Ritzenhein, supra,* distinguishing other cases on the ground that the action there before the court sounded in tort, there had been no proof of demand for payment and the amounts claimed were unliquidated. See, also, *Cataldo* v. *Winjack Corporation* (1966), 4 Mich App 398, and *Davis* v. *Walker* (1869), 18 Mich 25, 26, where there were a large number of transactions and no balance between the parties had been struck.

[7] Interest has been allowed in a number of cases where damages were recovered for the destruction of personal property. *Standard Oil Co.* v. *Payne* (1922), 220 Mich 663, 669 (buildings); *Gates* v. *Comstock* (1897), 113 Mich 127, 129 (timber); *Coan* v. *Township of Brownstown* (1901), 126 Mich 626, 630 (threshing engine).

with the jury to allow interest on damages in case of trespass to real property." *Taylor* v. *Bay City Street Railway Company* (1894), 101 Mich 140, 146.

Still earlier, in *Snow* v. *Nowlin* (1880), 43 Mich 383, an action for misrepresentation, the Court observed (p 387):

"In cases of contract and many cases of tort the rule is well settled in this State that interest may be allowed by way of damages. *The plaintiff is allowed full compensation for the injury he has sustained.* He is to be placed as nearly as can be in the position he would have occupied if the representations made had been true. The difference in value will not accomplish this unless interest is added thereto." (Emphasis added.)

The concept that interest should be allowed as part of damage in order to accomplish full compensation also finds expression in *Lane* v. *Ruhl* (1894), 103 Mich 38, 45, 46 (damages for detaining possession of real property: "clearly, any computation which would put nothing in the place of interest would not give full compensation") and *McCreery* v. *Green* (1878), 38 Mich 172, an action for unpaid compensation, where, although there was "wide difference of opinion as to the measure of damage" (p 177), interest was allowed "in the nature of damages for the improper detention" (p 185). Similarly, see *Steele* v. *Kellogg* (1910), 163 Mich 132, 149, an action for fraud and deceit, where the Court allowed interest as a matter of law, observing, "compensation is what the law means to allow in such a case." More recently, in *Mitchell* v. *Reolds Farms Co.* (1934), 268 Mich 301, 313, an action pursuant to a profit-sharing agreement, the Court held:

"It is clear the interest here involved is recoverable by way of damages, for refusal to pay over

money claimed to be rightfully due plaintiff,—for unlawful detention."

The loss of "use," or "detention," factor was also mentioned in allowing interest in *Coan* v. *Township of Brownstown* (1901), 126 Mich 626, 631 (loss of use of threshing machine), and *Edwards* v. *Sanborn* (1859), 6 Mich 348, 356–358 (delayed delivery of machinery).

In *Cree Coach Company* v. *Wolverine Insurance Company, supra,* in allowing interest against the insurer from the date liability was denied, the Court stressed the benefit to the defendant and detriment to the plaintiff of the delay in paying unliquidated amounts owing under extended coverage insurance. The delay in payment, and resulting benefits and detriments, was again emphasized in *Wilson* v. *Doehler-Jarvis Division of National Lead Company* (1960), 358 Mich 510, 516, allowing interest from the date of loss on workmen's compensation benefits. The Court recently followed its earlier holding in *Larsen* v. *Home Telephone Co.* (1911), 164 Mich 295, 324, by allowing interest in an action for wrongful death as an element of damage from the date of accrual of the claim. *Currie* v. *Fiting* (1965), 375 Mich 440, 454, 488, 489.[8]

The inclusion in the judgment of the substantial amounts here involved as interest is not a favor to be conferred, nor a penalty to be imposed.

---

[8] That interest should be allowed on withheld annuities, see *Stringer* v. *Stevens' Estate* (1906), 146 Mich 181, 187; overruled on other grounds *Morse* v. *Hayes* (1908), 150 Mich 597; and *Mason* v. *Soldiers' Home Managers* (1914), 181 Mich 347, 363. Prejudgment interest has been allowed a pensioner who successfully contended for added pension benefits. *Mauch* v. *Pittsburgh Pension Board* (1956), 383 Pa 448 (119 A2d 193). Compare *Board of Trustees of Police Pension Fund of Glen Ellyn* v. *Village of Glen Ellyn* (1949), 337 Ill App 183, 198, 199 (85 NE2d 473, 480, 481). See, also, *Herrmann* v. *Gleason* (CA 6, 1942), 126 F2d 936, reviewing the Michigan cases and, purportedly in application of Michigan law, allowing interest on renewal rent determined by arbitration for the

"Interest in this State is not allowed as a punishment: It 'is allowed as a legal compensation for lost use.'" *Standard Oil Co.* v. *Payne* (1922), 220 Mich 663, 671.

While no record has been made as to the dollar benefit to the defendant city and dollar cost to plaintiffs and the class of the delay in payment, we do not think the result can turn on such proofs. It would unnecessarily complicate lawsuits if the payment of interest were dependent upon such proofs. Any rule requiring such proofs would be unworkable.

We are persuaded the Michigan cases that allow interest as part of the damage in order to accomplish full compensation focus on the objectively sound facet of the matter. Although that principle seems clear, the difficult question of what is full compensation, neither excessive nor inadequate, is still very much with us. At one end of the spectrum, the allowance of interest as part of the damage for delay in paying an agreed sum presents no problem. At the other end, there is understandable reluctance to allow addition of an amount for interest to what is essentially a discretionary award, *e.g.*, for pain and suffering, ungoverned by any standard other than overall reasonableness.[9]

Between the debt fixed with complete certainty and the one completely "at large," there is the range from those damages based on well-established facts, *e.g.*, stock or commodity market prices, to those based on facts selected by the trier from widely disparate proofs.

In fashioning sensible rules of law, the disallowance of interest to avoid excessive compensation

20-month period consumed by the arbitration proceeding; *Marshfield Steel Company* v. *NLRB* (CA 8, 1963), 324 F2d 333, 338.

[9] Where, however, the "prospective damages are to be reduced to present worth, it is equally just that damages which have accrued should carry interest from the date of accrual." *Currie* v. *Fiting, supra*, 454.

makes sense, not because the damages are unliqui-
dated or otherwise uncertain but because to add
interest would be redundant. The form in which
a question is stated directs one's thinking, and not
infrequently influences the answer. We unnecessar-
ily divert ourselves from the central inquiry—are
the damages proportional to the loss—when we un-
duly contemplate the various "tests." We see no
need to decide the somewhat metaphysical questions
whether the principal damages here allowed were
liquidated, or reasonably ascertainable at the time
of the breach, or measurable by a fixed or estab-
lished external standard, or by one referable to the
documents upon which plaintiffs based their claim,
or the like, even though the principal damages here
probably could be fitted into several of those cate-
gories.

The allowance of interest here would not result
in more than full compensation. It is apparent that
not to allow interest would be to deny full compen-
sation. As a result of the delay in payment, the
defendant city has had the use of plaintiff's money,
in whatever amount ultimately is found due and
without regard to when that computation was or
could have been made, and plaintiffs have been de-
nied the use of those funds. Irrespective of when
the principal damages are computed, the nature of
the elements that make up the principal damages pre-
clude an excessive award. The addition of interest
thereto is not redundant, but rather is essential to
avoid inadequate compensation.

In this State interest may be recovered from mu-
nicipal corporations. *Marion* v. *City of Detroit*
(1938), 284 Mich 476; *Kaminski* v. *Wayne County
Board of Auditors* (1938), 287 Mich 62, 68. A de-
mand ordinarily must be made upon the proper au-
thority to start the running of interest. It has been
held, however, that when demand would be futile,

demand is not required. *Thal* v. *Detroit Board of Education* (1946), 316 Mich 351, 358; *Tumey* v. *City of Detroit* (1947), 316 Mich 400, 414. Here a demand in the form of a petition specifying their claims was filed by the plaintiffs on August 24, 1964. That petition was rejected on September 29, 1964. Plaintiffs do not request interest prior to August 24, 1964.

If demand was unnecessary, the members of the class who did not join in the petition would also obtain interest from August 24, 1964. We see no need, however, to determine whether demand was necessary. Upon rejection of the August 24, 1964, petition, any further request for payment by those who did not join in that petition clearly would have been futile. Having in mind the relatively small time interval between August 24 and September 29, 1964, and, thus, the relatively small sum involved for each member of the class, we simply hold that interest will be allowed to all those who joined in the petition from the date it was filed, and to all others from the date of its rejection.

The judgment is affirmed, except that on remand (1) there shall be a separate determination for each plaintiff and member of the class whether longevity pay is part of the pay he would have enjoyed had it been part of the compensation program at the time of his retirement, (2) the clothing and uniform allowance shall not be treated as pay, and (3) interest shall be allowed from August 24, 1964, the date of the petition to the city council, to those who signed the petition, and to all others in the class from the date of its denial, September 29, 1964.

Affirmed in part and reversed in part. No costs, a public question.

FITZGERALD, P. J., and McGREGOR, J., concurred.