*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

VINCENT OWEN,

       Plaintiff-Appellant,

v

DENNIS CONTO, LUTHER LOGISTIC
TRANSPORTATION LLC, and LUTHER
LEASING LLC,

       Defendants-Appellees,

and

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

       Defendant.

UNPUBLISHED
January 7, 2020

No. 345253
Macomb County Circuit Court
LC No. 2016-001536-NI

Before: RIORDAN, P.J., and JANSEN and STEPHENS, JJ.

PER CURIAM.

Plaintiff Vincent Owen (plaintiff) appeals as of right the trial court's Order Granting No Cause of Action after a jury verdict of no cause of action. The jury specifically determined that plaintiff was not injured when his vehicle was sideswiped by a semi-truck driven by defendant Dennis Conto (defendant) who was at the time working for defendant Luther Logistic Transportation, LLC or Luther Leasing, LLC. We affirm.

## I. BACKGROUND

This case arises from a motor-vehicle accident that occurred on June 26, 2015. Plaintiff was travelling in the right lane on Mound Road in a 2009 Impala when defendant, who was driving a semi-truck, entered plaintiff's lane, sideswiped plaintiff's vehicle, and pushed it over the curb onto the grass. Defendant kept driving and had to be stopped by other drivers approximately a mile and a half away from the accident. He claimed he did not know that his vehicle had struck plaintiff's. Witness at the scene, Angela Jackson, and responding officer,

Timothy Kulhanek, testified that plaintiff did not report being hurt in the accident. An ambulance was not called and plaintiff proceeded to his place of employment. Plaintiff soon left work to go to the emergency department for neck and back pain. He was discharged with a diagnosis of strains and contusions. Plaintiff, still experiencing pain, sought chiropractic care, physical therapy and steroid injections before eventually undergoing what would be the first of three surgeries to his neck, back and pelvis. In May 2016, plaintiff filed a complaint against defendant and defendant's employer. Plaintiff alleged that defendant was negligent in his operation of the semi-truck, that his employer Luther was negligent under a theory of vicarious liability and negligent in hiring defendant. Plaintiff pled an additional claim for first party benefits against State Farm Mutual Automobile Insurance Company.[1]

Defendants Conto and Luther admitted liability and the case proceeded to trial on the issues of causation and damages. Plaintiff filed a motion in limine to strike or limit testimony from defendants' biomechanical expert Brian Weaver, P.E. on the basis that Weaver was unqualified to offer an opinion as to the causation of plaintiff's injuries because he lacked a medical degree. Defendants responded that Weaver was to offer testimony within his expertise concerning the physical forces at play during an accident. The court denied the motion and held that plaintiff could challenge Weaver's expertise at trial. Plaintiff also filed a motion in limine to Prohibit Improper Arguments, Evidence, and Statements at Trial regarding alleged attorney referred treatment. The court denied that motion finding that it was premature and that the issues could be handled at trial. At trial, testimony was elicited from the parties, witnesses to the accident, the orthopedic surgeons who treated plaintiff, the independent medical examiners, and the testimony of biomechanical expert Weaver.

The jury, in response to a special jury verdict form, found that plaintiff had not sustained a physical injury and the court entered a judgment for No Cause of Action. Plaintiff moved unsuccessfully for judgment notwithstanding the verdict (JNOV). On appeal, plaintiff raises the same issues he raised in his motion for JNOV or a new trial. He asserts three errors: admission of Weaver's testimony; admission of and evidence of his bankruptcy; and denial of his motion for JNOV. He argues that the court erred when it failed to grant him JNOV due to defendants' theory of attorney-driven treatment which denied him a fair trial. He also argues that the jury's verdict of no physical injury was against the great weight of the evidence.

## II. ATTORNEY-DRIVEN TREATMENT

### A. STANDARD OF REVIEW

"This Court reviews de novo the trial court's decision to grant JNOV, and, if reasonable jurors could have reached different conclusions, the jury verdict must stand." *Nelson v Dubose*, 291 Mich App 496, 499; 806 NW2d 333 (2011). We "review the evidence and all legitimate inferences in the light most favorable to the nonmoving party." *Wilkinson v Lee*, 463 Mich 388, 391; 617 NW2d 305 (2000). "A trial court should grant a motion for JNOV only when there was

---

[1] Plaintiff's claim against State Farm was dismissed from this action and handled outside of court through arbitration.

insufficient evidence presented to create an issue for the jury." *Attard v Citizens Ins Co of Am*, 237 Mich App 311, 321; 602 NW2d 633 (1999).

"The grant or denial of a motion for a new trial rests in the discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion." *Vargo v Denison*, 140 Mich App 571, 573; 364 NW2d 376 (1985).

> When reviewing an appeal asserting improper conduct of an attorney, the appellate court should first determine whether or not the claimed error was in fact error and, if so, whether it was harmless. If the claimed error was not harmless, the court must then ask if the error was properly preserved by objection and request for instruction or motion for mistrial. If the error is so preserved, then there is a right to appellate review; if not, the court must still make one further inquiry. It must decide whether a new trial should nevertheless be ordered because what occurred may have caused the result or played too large a part and may have denied a party a fair trial. If the court cannot say that the result was not affected, then a new trial may be granted. Tainted verdicts need not be allowed to stand simply because a lawyer or judge or both failed to protect the interests of the prejudiced party by timely action. [*Reetz v Kinsman Marine Transit Co*, 416 Mich 97, 102-103; 330 NW2d 638 (1982).]

## B.  ANALYSIS

Plaintiff argues that defendants' counsel engaged in misconduct by arguing that plaintiff's medical treatment was attorney driven because the argument was based on speculation.  He further argues that the introduction of this speculative theory denied him a fair trial.  We disagree.

"While a lawyer is expected to advocate his client's cause vigorously, parties are entitled to a fair trial on the merits of the case, uninfluenced by appeals to passion or prejudice." *Bd of Co Rd Com'rs of Wayne Co v GLS LeasCo, Inc*, 394 Mich 126, 131; 229 NW2d 797 (1975) (quotation marks and citation omitted).  "Irrelevant, disparaging and accusatory remarks divert the attention of the jury from the merits of the case." *Id*. at 138.  The repetitive nature of the attack is what creates the increased probability of prejudice. *Id*. at 131.  When "the theme is constantly repeated so that the error becomes indelibly impressed on the juror's consciousness, the error becomes incurable and requires reversal." *Reetz*, 416 Mich at 111; See *Steudle v Yellow & Checker Cab & Transfer Co*, 287 Mich 1, 12; 282 NW 879 (1938) ("We think the course of misconduct was so persistently followed that a charge of the court in an effort to obviate the prejudice would have been useless.").  In deciding whether to reverse, we look for "a deliberate course of conduct on the part of counsel . . . aimed at preventing [the other party] from having a fair and impartial trial." *Steudle*, 287 Mich at 11-12.

We begin our review with an analysis of the claimed error surrounding the evidence regarding the relationship between the plaintiff's counsel's law firm and the plaintiff's health care providers.  It is relevant to the case whether the plaintiff's course of healthcare was influenced in any way by factors other than legitimate medical judgment.  Therefore, if counsel had a good faith belief that evidence existed regarding such non-medical factors, including

financial gain for the health care providers, it would not be misconduct to introduce argument and questions in that regard. In this case, defendants had a filing from federal court that listed 105 cases in which Dr. Kornblum had both treated clients represented by the Morse law firm and testified on the patients' behalf over a five-year period. Thus, counsel had a basis other than speculation for inquiry into this relevant area. Dr. Kornblum emphatically denied such relationships.

The conduct of defense counsel did not deny plaintiff a fair trial. The issue of attorney referrals appeared in four ways during this trial: 1) in opening argument, 2) during plaintiff's cross-examination, 3) during Dr. Kornblum's cross-examination, and 4) during closing arguments. As we noted above, the issue of attorney referrals was relevant to the case and counsel had a good faith basis upon which to ask questions in this regard. This line of questioning did not, however, prove very productive for the defense. Dr. Kornblum denied the existence of a referral relationship and an affidavit was introduced from plaintiff's treating chiropractor which also denied any attorney referral relationship. Additionally, plaintiff affirmatively stated that he had no idea why he was referred by his treating chiropractor to Dr. Kornblum's office and that he was not referred to the chiropractor by the Morse firm. A majority of defense counsel's comments regarding attorney referrals was in opening and closing arguments. The opening statements foreshadowed evidence that the defense believed would be introduced, if only by the federal court filing, and the closing argument referred to evidence that was in fact introduced at trial. Defense counsel drew inferences favorable to his client from that evidence. The plaintiff argued opposite inferences. Ultimately, the jury was instructed that these portions of the trial were not evidence. The trial court did not err in declining to grant a JNOV based upon this line of inquiry or argument.

## III. SUFFICIENCY OF THE EVIDENCE

### A. STANDARD OF REVIEW

"This Court reviews de novo the trial court's decision to grant JNOV, and, if reasonable jurors could have reached different conclusions, the jury verdict must stand." *Dubose*, 291 Mich App at 499. We "review the evidence and all legitimate inferences in the light most favorable to the nonmoving party." *Wilkinson*, 463 Mich at 391. "A trial court should grant a motion for JNOV only when there was insufficient evidence presented to create an issue for the jury." *Attard*, 237 Mich App at 321.

### B. ANALYSIS

Plaintiff argues he is entitled to JNOV or alternatively a new trial because the jury determination that plaintiff had not sustained a physical injury was contrary to the medical evidence in this case. We disagree.

In relevant part, MCR 2.611(A)(1) provides that

A new trial may be granted to all or some of the parties, on all or some of the issues, whenever their substantial rights are materially affected, for any of the following reasons:

(e) A verdict or decision against the great weight of the evidence or contrary to law.

* * *

(g) Error of law occurring in the proceedings, or mistake of fact by the court.

The evidence in this case did, in fact, support the existence of a significant medical condition for which the plaintiff required surgery. However, there was evidence from which a jury could decide that the 2015 accident did not cause that physical condition. Jackson and the responding officer at the scene both testified that plaintiff reported he was not hurt. Plaintiff was able to drive himself down the road where defendant was stopped, then to work, and later to the hospital. Weaver opined that plaintiff's diagnosed medical conditions were not from the 2015 car accident because neither the force nor the motion in that accident were consistent with the diagnoses that necessitated his surgeries. Images of plaintiff's cervical spine taken on April 27, 2012, showed some degenerative abnormalities, arthritis, and signs of old trauma. Plaintiff's MRI and CAT scan taken on the day of the accident only revealed degenerative conditions and plaintiff was released from the hospital with a diagnosis of strains and contusions. Dr. Singer opined that plaintiff had some preexisting arthritic or longstanding changes of the neck, thoracic spine and lumbar spine that were jarred or rattled and that he experienced a soft tissue strain of the neck as a result of the accident. Dr. Delano opined that there was no imaging evidence that would suggest the body suffered trauma in the June 2015 accident. Dr. Drouillard did not find any objective evidence of trauma in the plaintiff's films.

On the other hand, there was also evidence introduced that plaintiff was physically injured by the 2015 car accident. Dr. Munk opined that more likely than not, plaintiff's back or SI joint pain was caused by the accident because plaintiff self-reported the pain beginning after the June 26, 2015 car accident. Dr. Delano testified that an August 17, 2015 MRI of the thoracic spine showed some edema or swelling at the T7 level that he believed was a disc herniation into the bone that could have been caused by "trauma or heavy lifting or any number of things." Dr. Kornblum also opined that because plaintiff did not have neck problems in 2013 and 2014, he thought the extent of the herniations in plaintiff's neck at C4-5 and C5-6 were caused by the 2015 accident.

The jury chose to believe the defense experts and find that the plaintiff did not sustain an injury in the 2015 accident. The verdict was not against the great weight of the evidence and was supported by competent evidence. JNOV or the grant of a new trial was inappropriate and the court did not err in refusing to grant the motion.

IV. EXPERT TESTIMONY

A. STANDARD OF REVIEW

We review the trial court's decision to admit evidence for an abuse of discretion. *People v Bergman*, 312 Mich App 471, 492; 879 NW2d 278 (2015). "A trial court abuses its discretion when it chooses an outcome that is outside the range of reasonable and principled outcomes." *People v Orr*, 275 Mich App 587, 588-589; 739 NW2d 385 (2007).

B.  ANALYSIS

Plaintiff argues the trial court abused its discretion in allowing defendants' biomechanical expert, Brian Weaver, to testify regarding whether plaintiff sustained an injury from the accident because the expert was not medically qualified to render an opinion as to the cause of specific injuries and his opinion was further inadmissible under MRE 702.  We disagree.

The admissibility of expert testimony is governed by MRE 702.  Notably, the court did not make a pretrial ruling as to the admissibility of Weaver's testimony under MRE 702.  In any event, the rule provides:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

"The admission of expert testimony requires that (1) the witness be an expert, (2) there are facts in evidence that require or are subject to examination and analysis by a competent expert, and (3) the knowledge is in a particular area that belongs more to an expert than to the common man." *Dept of Envtl Quality v Waterous Co*, 279 Mich App 346, 381; 760 NW2d 856 (2008).  "The party that proffers the expert bears the burden of persuading the trial court that the expert has specialized knowledge that will aid the factfinder in understanding the evidence or determining a fact in issue." *Davis v Link, Inc*, 195 Mich App 70, 73–74; 489 NW2d 103 (1992).  A witness may be qualified as an expert by knowledge, skill, experience, training, or education.  MRE 702; *Mulholland v DEC Int'l Corp*, 432 Mich 395, 403; 443 NW2d 340 (1989).  "An expert who lacks 'knowledge' in the field at issue cannot 'assist the trier of fact.' " *Gilbert v DaimlerChrysler Corp*, 470 Mich. 749, 789; 685 NW2d 391 (2004).  However, "[g]aps or weaknesses in the witness' expertise are a fit subject for cross-examination, and go to the weight of his testimony, not its admissibility." *Wischmeyer v Schanz*, 449 Mich 469, 480; 536 NW2d 760 (1995).

The trial court did not abuse its discretion in admitting Weaver's expert testimony.  The substance of Weaver's testimony was scientific, technical and not common knowledge to the average person.   Weaver's testimony was probative of a fact at issue at trial, whether the accident caused plaintiff's injuries, specifically his herniated discs.  Weaver was further qualified to testify about how forces and motion impact the body, in this case the spine, by nature of his knowledge, experience, training, and education on the subject.  In addition to his engineering degree in mechanics and biomechanics, Weaver had a master's degree in the specialty of orthopedics.  He was specially trained to investigate vehicle accidents.  He had studied "the intervertebral disc as a function of both posture and muscle activation to protect the disc."  He had published work "on the effect of strengthening the back to decrease the likelihood of obtaining disc herniation."  Weaver was very clear to tell the jury that he was not a doctor and that he did not diagnose injuries, but rather tried to explain their causes.  Plaintiff's contention that Weaver was not qualified to give an opinion on causation because he lacked a medical

degree highlights a weakness or gap in Weaver's expertise that was subject to cross-examination. Weaver was otherwise qualified to render an opinion grounded in biomechanics. His opinions were based upon sufficient facts and data and the product of reliable principles and methods. Weaver's opinions began with his review of facts and data in evidence.[2] Specifically, he used photographs, police reports, depositions, medical records, and plaintiff's biometrics, to opine that plaintiff's diagnosed medical conditions were not from the 2015 car accident because he did not sustain the required motions and force consistent with his diagnoses. Weaver relied on the laws of physics and the principles of dynamics, peer reviewed biomechanical studies, computer models, simulated test devices, statistical data of vehicle crash testing, and his training and experience in reaching this conclusion.

We reject plaintiff's request to find that in general, biomechanical engineers, as non-physicians, are not qualified to give opinions as to causation. The only published case cited by plaintiff for Michigan that excluded a biomechanical engineer's expert testimony at trial was *People v Unger*, 278 Mich App 210; 749 NW2d 272 (2008). In *Unger*, the biomechanical engineer's testimony was excluded not only because he was not a physician, but also because his theory as to how the victim's injury occurred was "based on conjecture and [was] inconsistent with the facts in evidence . . . ." *Id.* at 249. The same circumstances do not apply here where Weaver's opinion was not based on conjecture, multiple physicians agreed with his report, and his conclusion that the herniations were not caused by the accident was consistent with the facts in evidence.

## V. EVIDENTIARY ERROR

### A. STANDARD OF REVIEW

We review the trial court's decision to admit evidence for an abuse of discretion. *Bergman*, 312 Mich App at 492. "A trial court abuses its discretion when it chooses an outcome that is outside the range of reasonable and principled outcomes." *Orr*, 275 Mich App at 588-589.

### B. ANALYSIS

Plaintiff argues that the trial court abused its discretion in admitting his 2005 bankruptcy at trial because it "had no substantial relation and is not material to this case." We disagree.

Generally, "[a]ll relevant evidence is admissible" and "[e]vidence which is not relevant is not admissible." MRE 402. Plaintiff's contention that the evidence must have a "substantial relation" to the case reads more into the rule than what is required. Relevant evidence is evidence having "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. MRE 403 provides, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the

---

[2] MRE 703 provides that "[t]he facts or data in the particular case upon which an expert bases an opinion or inference shall be in evidence."

issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." "Evidence bearing on a witness's credibility is always relevant[.]" *In re Dearmon*, 303 Mich App 684, 696; 847 NW2d 514 (2014). "Evidence that shows bias or prejudice on the part of a witness is always relevant." *Powell v St John Hosp*, 241 Mich App 64, 72; 614 NW2d 666 (2000). "Testimony ... which touches the bias or interest of the witness[ ] is always admissible, and can be shown upon his cross-examination, and, if denied by him, can be proven on rebuttal; the proper foundation being laid for such proof." *Swift Electric Light Co v Grant*, 90 Mich 469, 475; 51 NW 539 (1892).

MRE 608(b) provides:

Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness'character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

In this case, evidence of plaintiff's fraud in a prior bankruptcy was raised during plaintiff's cross-examination. Defendants argued the evidence was admissible under MRE 608(b) as a specific instance of a judicial determination of credibility. Plaintiff opposed admission of the evidence on the ground that it was more prejudicial than probative because it was over 10 years ago. The court held that it had "no choice but to allow this evidence in." We do not read this statement as the court believing that it had no discretion as to the admission of the evidence but, instead as an expression that the nature of this evidence, lying in a court proceeding, was such that it was relevant, probative and admissible in this case. The court's decision was not an abuse of discretion. Plaintiff's credibility was one of the central issues in this case. There were multiple factual determinations to be made regarding his truthfulness of the injuries he suffered, when they occurred, and to what extent they impaired his daily activities. Similarly, plaintiff's credibility was central to his motive for bringing this suit and the truthfulness of his claims for damages.

Plaintiff further claims that the evidence unfairly prejudiced him by interjecting extraneous considerations of greed that played off defendants' theory of attorney driven referrals. However, it was just as likely that the evidence garnered sympathy for plaintiff and, as decided above, defense counsel's conduct was not so egregious as to deny plaintiff a fair trial.

Plaintiff also contends that "[t]he defense of this case resulted in a verdict based on bias, sympathy (for Defendants), anger and/or shock and, as such, the verdict cannot be permitted to stand as much as anyone seeks to give deference to a jury." Plaintiff fails to identify in what ways the defense created bias, sympathy, anger and shock. Accordingly, this undeveloped contention is abandoned. See *In re JS & SM*, 231 Mich App 92, 98; 585 NW2d 326 (1998) ("The failure to brief the merits of an allegation of error is deemed an abandonment of an issue.").

At the end of plaintiff's brief, he argues that the combination of all the errors in his trial amount to him being deprived of a fair trial. Sometimes, "[t]he cumulative effect of a number of minor errors may require reversal." *Stitt v Holland Abundant Life Fellowship*, 243 Mich App 461, 471; 624 NW2d 427 (2000). However, since we found no error, plaintiff's cumulative error argument is without merit.

Affirmed.

/s/ Michael J. Riordan
/s/ Kathleen Jansen
/s/ Cynthia Diane Stephens